UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>V.<br><br>EDDIE PAUL HARRIS,<br>    Defendant. | CRIMINAL NO. 5:16-51-KKC<br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the motion to suppress by the defendant Eddie Paul Harris. Harris moved for a suppression hearing on the Friday before the Monday that trial was set to begin. Nevertheless, the Court conducted a suppression hearing on the morning of trial at which both parties were offered the opportunity to present evidence and argument.

Harris is charged with being a felon in possession of a firearm. He moves to suppress the sawed-off shotgun that forms the basis for his charge and also moves to suppress certain statements he made to law enforcement officers after he was arrested regarding the location of the gun.

Harris has a violent criminal history, including two murder convictions. At the time of his arrest, he was on probation and under the supervision of state probation officers. Harris's probation officer, Michael Roberts, testified that Harris was considered a high-risk supervisee.

As a condition of his release, Harris agreed that he was subject to search and seizure without a warrant if his probation officer should have reasonable suspicion that he may

have contraband on his person or property. Harris also agreed that he would not violate any state law and that, if he were to be arrested, cited, or questioned by a law enforcement officer, he would report that information to his probation officer.

Probation Officer Roberts testified that, in December 2015, Harris informed him that he had been charged with menacing. Officer Roberts learned that the charge came after Harris allegedly drove into the driveway of another individual and pulled out a shotgun. After learning of the menacing charge, Officer Roberts instructed Harris to report to the probation office. Harris did not do so. Accordingly, Officer Roberts obtained a bench warrant for Harris's arrest from a state court judge. The warrant commanded officers to arrest Harris at 450 Sims Rd., Hustonville, Kentucky.

Because of Harris's violent criminal history, the probation officer requested the assistance of the county sheriff in effecting Harris's arrest. The sheriff's office was also concerned about safety and contacted the Kentucky State Police (KSP), which has a special unit equipped to handle high-risk situations. Despite the fact that Harris had agreed as a condition of his probation to a search of his person and residence upon reasonable suspicion of contraband, the KSP followed its own administrative requirements and obtained a search warrant prior to proceeding to Harris's residence to effect the arrest.

Various KSP law enforcement officers arrived at Harris's residence and pulled into the driveway. Detective Monte Owens testified that he immediately announced over a loudspeaker that the officers were with the Kentucky State Police and had a warrant for Harris's arrest. He instructed Harris to exit the house. Detective Owens testified that there was no response. Accordingly, the KSP deployed "flash bangs," which consist of loud noises and flashes of light, in order to get the attention of the occupants of the residence and to ensure they were aware the officers were outside.

A female, later identified as Geraldine Hodge, exited the house. KSP Sergeant William Shuffett testified that Hodges stated that Harris was inside, loading a shotgun. The officers then deployed tear gas and, a short time later, Harris exited the residence and he was arrested. After he was handcuffed, Harris told the officers that, if they had not deployed tear gas, he would have come out shooting. The arresting officers testified that Harris was talking excitedly and made unsolicited statements regarding the location of the shotgun. Detective Owens testified that Harris was "talking up a storm" and indicated he had a shotgun in the bedroom. After detaining Harris, officers entered the residence to do a sweep to determine if any other occupants were inside. They found no other occupants. Officers then reentered the building and retrieved the shotgun at issue in this case.

Harris moves to suppress the shotgun and his statement after he was arrested regarding the location of the shotgun. As to the statement, he argues that, prior to him making it, the officers did recite the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966). Under *Miranda*, prosecutors cannot use statements made by an individual in custody unless, prior to any questioning, police officers give the individuals certain warnings to secure the privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

As the Court explained at the hearing, there is no evidence that any officer asked Harris any question prior to his statements regarding the location of the shotgun. The officers testified that Harris was talking excitedly and spontaneously uttered the statement immediately after being handcuffed. Accordingly, the officers were not required to give Harris *Miranda* warnings prior to the statement and it will not be suppressed.

As to the officers' retrieval of the shotgun, Harris argued during the hearing that the search warrant that the KSP obtained was invalid. For the reasons stated on the record, the Court found that the KSP search warrant was valid and that, if not, the search was

supported by the good-faith exception to the warrant requirement under *United States v. Leon*, 468 U.S. 897, 925 (1984). Under *Leon*, "[c]ourts should not . . . suppress 'evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant.'" *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir.2004)

More importantly, however, the Court found that the validity of the KSP search warrant was immaterial. As a condition for probation, Harris had specifically consented to the warrantless search of his person and residence anytime his probation officer should have a reasonable suspicion that contraband would be found there. Probation Officer Roberts was aware that Harris had a violent criminal history – including murder and armed robbery. Further, he had most recently been charged with menacing another individual while in possession of a shotgun. After the menacing charge, Harris had failed to report to the probation office as instructed to and in violation of the conditions of his release. Upon exiting the residence on the day of Harris's arrest, Hodges stated that Harris had a shotgun inside the residence. This certainly constituted reasonable suspicion that a firearm would be located at Harris's residence or on his person.

For all these reasons and those stated on the record at the hearing on this matter, the Court hereby ORDERS that Harris's motion to suppress is DENIED.

Dated February 10, 2017.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

4